IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 22-cv-01265-CNS

JUAN CAUDILLO,

    Applicant,

v.

ELIZABETH CARTER, Warden, Florence FPC,

    Respondent.

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Applicant Juan Caudillo's *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the Application). (ECF No. 1). The Court must construe the Application and other papers filed by Mr. Caudillo liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). For the following reasons, the Court DENIES the Application and DISMISSES this action.

### I. BACKGROUND

Mr. Caudillo is a federal prisoner in the custody of the Bureau of Prisons (BOP) at the Federal Prison Camp in Florence, Colorado. Mr. Caudillo claims in the Application that Respondent has refused to award and apply time credits in violation of the First Step Act (FSA), 18 U.S.C. § 3632. Applicant states that he has served 41 months of his 100-month sentence as of the date of the Application. (ECF No. 1, p. 2). He alleges that he is eligible to receive 600 FSA time credits because the BOP has assessed his recidivism risk to be low and he has been "actively

1

participating" in "EBRR" programming and other "productive activities" since entering BOP custody. (*Id*., p. 4).

On August 11, 2022, Respondent was ordered to show cause why the application should not be granted. On October 12, 2022, after being granted an extension of time, Respondent filed a timely Response to Order to Show Cause (ECF No. 26) arguing that the Application should be denied. According to Respondent, the Application is moot as to 30 of the requested credits because those credits have been applied to Mr. Caudillo's sentence, and Mr. Caudillo fails to demonstrate he is entitled to any additional credits under the FSA. Mr. Caudillo did not file a reply despite being given an opportunity to do so.

## II. ANALYSIS

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief is warranted only if Applicant "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Applicant bears the burden to demonstrate he is entitled to relief. *See Gayton v. Romero*, 503 F. App'x 562, 564 (10th Cir. 2012) (denying certificate of appealability because petitioner failed to meet his "burden of proof of clearly showing or stating how his sentence has been calculated by prison authorities, what particular calculations he asserts are erroneous, and the reasons and or authority for his assertions.") (internal quotation marks and citation omitted); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner.").

A. The First Step Act

1. Statutory Framework

"Congress enacted the First Step Act to reform sentencing law and to reduce recidivism." *United States v. Saldana*, 807 F. App'x 816, 818 (10th Cir. 2020) (unpublished). Relevant to Mr. Caudillo's claim, the FSA provides that an eligible prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" that "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(A), (C).

In general, an inmate eligible for FSA time credits "shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction [EBBR] programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). If the BOP determines the prisoner is "at a minimum or low risk for recidivating" and "has not increased their risk of recidivism" over "2 consecutive assessments," the inmate "shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii).

"Successful participation" under § 3632(d)(4)(A)(i) means the inmate has participated in an EBRR program or productive activities based on the inmate's risk and needs assessment, and has complied with the requirements for that program or activity. 28 C.F.R. § 523.41(c)(2). An inmate will not be considered to be successfully participating in an EBBR program in certain situations, including placement in a Special Housing Unit; opting out of the programming or activity; or being removed from BOP custody. 28 C.F.R. § 523.41(c)(4)(i), (ii) and (v).

Inmates cannot earn FSA time credits for programming or activities completed prior to the commencement of their sentence, and inmates serving sentences for enumerated crimes are not

3

eligible for FSA time credits. *See* 18 U.S.C. § 3632(d)(4)(B), (D). FSA time credits also can be lost (and subsequently restored) as part of the prison disciplinary process. *See* 18 U.S.C. § 3632(e).

FSA time credits "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. §§ 3632(d)(4)(C). "To the extent practicable," the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). Pre-release custody entails either home confinement or placement in a residential reentry center. *See* 18 U.S.C. § 3624(g)(2).

**2. BOP Calculation Procedures**

Respondent has submitted a sworn declaration from Susan Giddings, the Chief of the Unit Management Section of the Correctional Programs Branch organized under the Correctional Programs Division in the BOP's Central Office, that describes the BOP procedures for calculating time credits under the FSA. (ECF No. 26-1, Ex. A (hereinafter, Giddings Declaration)).

In January 2022 the BOP published its final rule implementing FSA time credit calculation procedures. (Giddings Declaration at ¶23). The BOP established interim procedures to implement the final rule while working to automate the process. (*Id.* at ¶24). Under the interim procedures, the BOP manually calculated an inmate's FSA time credits when the inmate approached 24 months from the projected release date. (*Id.* at ¶25). Calculations were based on the total number of days in the inmate's designated facility, divided by 30 days, and multiplied by 15 for inmates with Low or Medium risk levels. (*Id.* at ¶26). The interim, manual calculation of FSA credits was not performed for inmates with a projected release date beyond 24 months after July 30, 2022. (*Id.* at ¶25).

In September 2022, the BOP implemented auto-calculation procedures. (*Id.* at ¶32). Now, inmates have their time credits calculated and applied automatically each month until they reach the statutory maximum of 365 credits or they are within 18 months of their projected release date. (*Id.* at ¶¶33, 36). Ms. Giddings states that the 18-month cutoff is necessary because the BOP needs a fixed and predictable release date to perform the administrative tasks necessary to coordinate an inmate's transfer to prerelease custody and subsequent release. (*Id.* at ¶37).

> As an inmate's projected release approaches, BOP requires time to effectively engage the inmate in prerelease preparation planning and process the administrative documentation necessary for the transfer, which includes transfer to a community-based residential program to facilitate transition back into the community. These processes are only possible if at a certain point the inmate's release date is certain.

(*Id.*).

**3. Mr. Caudillo's FSA Credit Calculation**

On July 1, 2020, Mr. Caudillo was sentenced to a 100-month prison term and a three-year term of supervision. (Giddings Declaration at ¶38 & Attach. 2). He began serving his federal sentence on August 3, 2020. (Giddings Declaration at ¶39). Mr. Caudillo's projected release date via good conduct time credits is January 19, 2026. (*Id.* at ¶38 & Attach. 2). His projected release date via FSA time credits is December 20, 2025. (Giddings Declaration, Attach. 2).

On October 6, 2022, Mr. Caudillo's First Step Act time credits were calculated using the new automated process because he was not within 24 months of his projected release date while the interim procedures were in effect. (Giddings Declaration at ¶¶41, 42 & Attach 4). According to the BOP's calculations, Mr. Caudillo did not qualify for FSA time credits from the date his sentence commenced on July 1, 2020, until July 22, 2022, because "he was not in a qualifying admission status (i.e., he was in transit), was housed in the Special Housing Unit, or had not completed his needs assessment upon which his Risk and Needs Assessment was based."

5

(Giddings Declaration at ¶¶16, 34, 44 & Attachs. 3, 4). *See* 28 C.F.R. § 523.41(c)(4) (defining when an inmate "will generally not be considered to be 'successfully participating' in EBRR programs" or productive activities). Mr. Caudillo was disqualified from earning 751 days of programming during this time. (Giddings Declaration at ¶44 & Attach. 4).

The BOP has determined that Mr. Caudillo earned 76 program days from July 22, 2022, to October 6, 2022, and is eligible for 30 days of FSA time credits. (Giddings Declaration at ¶¶43, 45 and Attach. 4). Those credits have been applied to Mr. Caudillo's sentence. (Giddings Declaration, Attachs. 2, 4).

### B. Mootness

Respondent argues that Mr. Caudillo's claim is moot regarding the 30 FSA time credits that have already been applied to his sentence because there is no longer a live controversy as to those credits. The Court agrees.

Article III of the United States Constitution restricts the decision-making power of the federal judiciary to cases involving an actual case or controversy. *See Alvarez v. Smith*, 558 U.S. 87, 92 (2009). To satisfy the case or controversy requirement Mr. Caudillo must demonstrate he has suffered, or is threatened with, an actual injury traceable to Respondent and likely to be redressed by a favorable decision. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Furthermore, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* (internal quotation marks omitted). If the Court finds that a claim has become moot during the pendency of an action, it must dismiss the claim for lack of jurisdiction. *See Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) ("The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced,

6

once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction.") (citation omitted).

An exception to the mootness doctrine exists if Mr. Caudillo can demonstrate that one of the following exceptions applies: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Riley v. INS*, 310 F.3d 1253, 1256-57 (10th Cir. 2002) (quotations omitted).

Mr. Caudillo claims that he is entitled to a total of 600 days of FSA time credits. The record before the Court demonstrates that Mr. Caudillo has been awarded 30 days of FSA time credits, and, therefore, his claim is moot as to those credits. Mr. Caudillo does not state any facts in his Application to show that an exception to the mootness doctrine applies.

### C. Claim for Additional Credits

Mr. Caudillo asserts in the Application that since he entered BOP custody he has been "actively participating in approved EBBR and PA" and has "earned 15 days of credit for every 30 day period he has been in BOP's custody" for a total of 600 days of FSA time credits. (ECF No. 1, p. 4). However, the BOP determined that Mr. Caudillo did not qualify for FSA time credits during the period July 1, 2020, to July 22, 2022, because he was not successfully participating in an EBBR program or productive activity according to applicable federal regulations. (*See* Giddings Declaration, ¶16, 34, 44 & Attach. 3, 4); *see also* 28 C.F.R. § 523.41(c)(2), (c)(4).

Mr. Caudillo has not set forth any specific facts or a cogent argument to demonstrate that the BOP's decision not to award him time credits during the period July 1, 2020, to July 22, 2022, violated his rights under the FSA. As such, Mr. Caudillo is not entitled to any additional FSA time

7

credits and his request for habeas corpus relief will be denied.

## III.  CONCLUSION

For the foregoing reasons, it is ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) is DENIED WITHOUT PREJUDICE as moot with respect to the 30 FSA time credits applied to Mr. Caudillo's sentence and is otherwise DENIED WITH PREJUDICE.

It is FURTHER ORDERED that the Clerk of the Court is directed to close this case.

Dated this 6th day of December 2022.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge